OPINION
{¶ 1} The defendant-appellant, Tyrone McGhee ("McGhee"), appeals the judgment of the Shelby County Common Pleas Court sentencing him to ten years in prison.
 Statement of the Case {¶ 2} On March 4, 2005, the Shelby County Grand Jury indicted McGhee on nine charges including: three counts of trafficking in cocaine, violations of R.C. 2925.03, felonies of the fifth degree; two counts of trafficking in cocaine, violations of R.C.2925.03, felonies of the fourth degree; one count of possession of cocaine, a violation of R.C. 2925.11, a felony of the second degree; one count of possession of cocaine, a violation of R.C.2925.11, a felony of the third degree; one count of possession of cocaine, a violation of R.C. 2925.11, a felony of the fourth degree; and one count of engaging in a pattern of corrupt activity, a violation of R.C. 2923.32, a felony of the first degree. On June 17, 2005, the trial court held a change of plea hearing. McGhee withdrew his previously tendered pleas of not guilty and pled guilty to one count of engaging in a pattern of corrupt activity, a first degree felony, and the State of Ohio ("State") dismissed the remaining charges. At that time, McGhee signed a petition to enter guilty plea, stating he understood he could be sentenced to the maximum prison term of ten years. On September 30, 2005, the trial court held a sentencing hearing and filed its judgment entry. The court sentenced McGhee to serve the maximum sentence of ten years in prison for a first degree felony. On appeal, we vacated the sentence based on the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470. State v. McGhee, 3rd Dist. No. 17-05-27, 2006-Ohio-1885. On remand, the trial court held a new sentencing hearing and sentenced McGhee to ten years in prison. McGhee appeals the trial court's judgment and asserts the following assignment of error:
The sentence imposed on remand was imposed pursuant to ajudicially-created version of Ohio sentencing laws that, appliedretroactively to Mr. McGhee, violated his right to freedom fromex post facto laws.
 Sentencing History {¶ 3} In 1996, the General Assembly enacted S.B. 2, which "recognized the importance of `truth in sentencing'" and which was intended to "introduce certainty and proportionality to felony sentencing." Foster, at ¶ 34. See also Am. Sub. S.B. No.2, 146 Ohio Laws, Part IV, 7136. S.B. 2 established the range of definite prison sentences that could be imposed for each degree of felony offense. For example, if a defendant committed a third degree felony, he or she could be sentenced to either one, two, three, four, or five years in prison. R.C. 2929.14(A)(3). During any felony sentencing hearing, the trial court was, and still is, required to consider the principles and purposes of sentencing under R.C. 2929.11 and the recidivism and seriousness factors under R.C. 2929.12. S.B. 2 also directed trial courts to sentence defendants to the lowest possible sentence unless the court made certain findings justifying an upward departure. Additionally, the trial court was required to state factual reasons for making the findings. For example, the trial court would impose a one year sentence on a first-time offender who committed a third degree felony, unless the court could make findings justifying a sentence of either two, three, or four years. Additionally, S.B. 2 required findings of fact before the court could sentence an offender to the maximum prison term or before the court could impose consecutive sentences. See R.C. 2929.14(C); (E)(4).
 {¶ 4} In 2000, the United States Supreme Court held, "`[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Foster, at ¶ 3 (quoting Apprendi v. NewJersey (2000), 530 U.S. 466, 490, 120 S.Ct. 2348,147 L.Ed.2d 435). In 2004, the court applied Apprendi to Washington's state sentencing statute. Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. In Blakely, the court stated that the statutory maximum sentence "`is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.' (Emphasis sic and citations omitted)". Foster, at ¶ 7 (quotingBlakely, at 303-304). Therefore, Blakely ultimately stood for the proposition that the Sixth Amendment "prohibits a judge from imposing a sentence greater than that allowed by the jury verdict or by the defendant's admissions at a plea hearing." Id. However, the court did not offer a remedy for the defect.
 {¶ 5} Ohio's appellate districts were divided as toBlakely's effect on our sentencing laws. In 2005, we decidedState v. Trubee, 3rd Dist. No. 9-03-65, 2005-Ohio-552, in which we held Blakely inapplicable to Ohio's sentencing scheme. Numerous appeals were taken to the Ohio Supreme Court. Later in 2005, the United States Supreme Court decided United States v.Booker (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, in which the court found the federal sentencing guidelines to be unconstitutional because judges were making findings of fact in order to arrive at a sentence. Foster, at ¶ 8 (citing Booker,
at 227). The court remedied the problem by making the sentencing guidelines advisory. Id.
 {¶ 6} On February 27, 2006, the Ohio Supreme Court decidedFoster. Pertinent to this appeal, the court considered whether R.C. 2929.14(B), (C), and (E)(4) were unconstitutional. The court evaluated Apprendi, Blakely, and Booker and determined that the above mentioned statutory provisions violated defendants'Sixth Amendment rights because judges were required to engage in judicial fact-finding before sentencing to more than the minimum sentence, before imposing the maximum sentence, and/or before ordering consecutive sentences. The court discussed several potential remedies. First, the court rejected the idea of separate jury trials for the guilt phase and the sentencing phase. Id. at ¶ 87 (citing State ex rel. Mason v. Griffin,104 Ohio St.3d 279, 2004-Ohio-6384, 819 N.E.2d 644). Second, the court found that simply requiring trial courts to impose the minimum sentence did not comply with the legislative intent behind S.B. 2. Id. at ¶ 88-89. Finally, the court relied onBooker and determined that severing the offending provisions from the statute would be the appropriate remedy. Id. at ¶ 90-92. The court held that all cases on direct appeal and those cases pending in the trial courts were subject to sentencing pursuant to Foster. Id. at ¶ 104. Therefore, we were directed to vacate unconstitutional sentences and remand those cases to the trial courts for sentencing in compliance with Foster. Id. at ¶ 103.
 Arguments of the Parties {¶ 7} McGhee argues the new sentence violates his due process rights because the effect of Foster is to create an ex post facto law. McGhee contends that Foster applies retroactively and increases the penalty for offenses committed prior to the court's decision. Under Bouie v. Columbia (1964), 378 U.S. 347,84 S.Ct. 1697, 12 L.Ed.2d 894, McGhee contends the test of whether a judicial act creates an ex post facto law is "whether the late action of the judiciary was unforeseeable at the time of the commission of the offense." McGhee argues that Foster did not create a new sentencing procedure, but merely erased a presumption that was beneficial to the defendant, which was an unanticipated remedy. McGhee essentially seeks the benefit ofFoster's substantive holding, but he wishes to avoid the remedial holding.
 {¶ 8} In response, the State contends Foster does not violate constitutional protections against ex post facto laws because McGhee had notice of the potential maximum sentence when he committed his crime and when he made the decision to plead guilty. The State contends "this court should not find that the Ohio Supreme Court ordered trial courts to violate the constitution." Furthermore, the State argues that "[a] due process claim resting on ex post facto can only succeed if this Court were to determine that the Appellant did not have fair warning of the potential punishment at the time of the conduct or was subject to more severe punishment."
 Analysis {¶ 9} McGhee raises an issue of first impression for our court; however, two other appellate districts have considered the question. In State v. Smith, 2nd Dist. No. 21004, 2006-Ohio-4405, the court addressed whether Foster violates the ex post facto clause. The court vacated the defendant's original sentence and remanded the case to the trial court pursuant toFoster, but then the court went on to consider whetherFoster's holding created an ex post facto law. Smith, at ¶ 31-34. In so doing, the court concluded that Foster does not violate the ex post facto clause because defendants face the same potential sentences as they did before Foster was decided. Id. at ¶ 34. While we do not believe the constitutional question was properly before the court, we find its dicta persuasive. Additionally, the Ninth District Court of Appeals has considered the issue. The court found Foster does not violate the ex post facto clause, because it was "confident that the Supreme Court would not direct [it] to violate the constitution." State v.Newman, 9th Dist. No. 23038, 2006-Ohio-4082, at ¶ 11
(citations omitted).
 {¶ 10} "In contrast to determinations of fact which are accorded considerable deference, questions of law are examined by this court de novo." (Emphasis sic.) Ohio Bell Tel. Co. v.Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286
(citing Consumers' Counsel v. Pub. Util. Comm. (1979),58 Ohio St.2d 108, 110, 388 N.E.2d 1370). De novo is an independent review, without deference to the trial court's judgment.Consumers' Counsel, at 110.
 {¶ 11} Article I, Section 10 of the United States Constitution provides that no state shall pass ex post facto laws. The ex post facto clause extends to four types of laws:
"`1st. Every law that makes an action done before the passingof the law, and which was innocent when done, criminal; andpunishes such action. 2d. Every law that aggravates a crime, ormakes it greater than it was, when committed. 3d. Every lawthat changes the punishment, and inflicts a greater punishment,than the law annexed to the crime, when committed. 4th. Everylaw that alters the legal rules of evidence, and receives less,or different, testimony than the law required at the time of thecommission of the offense, in order to convict the offender.'"
(Emphasis added). Rogers v. Tennessee (2001), 532 U.S. 451,121 S.Ct. 1693, 149 L.Ed.2d 697 (quoting Calder v. Bull (1798),3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (seriatum opinion of Chase, J.)).
 {¶ 12} Additionally, "`Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments.'" Smith v. Smith, 109 Ohio St.3d 285,2006-Ohio-2419, 847 N.E.2d 414, at ¶ 6 (quoting Vogel v. Wells
(1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154). "The retroactivity clause nullifies those new laws that `reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].'" (Bracketed material sic.) (Emphasis added.) Bielat v. Bielat,87 Ohio St.3d 350, 353, 2000-Ohio-451, 721 N.E.2d 28 (quotingMiller v. Hixson (1901), 64 Ohio St. 39, 51, 59 N.E. 749).
 {¶ 13} Although the federal and state constitutions prohibit ex post facto legislation, similar restrictions have been placed on judicial opinions. In Bouie, the Supreme Court stated: "[i]ndeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law". Bouie, at 353. Soon after Bouie,
appellants began arguing that various judicial decisions violated the ex post facto clause. The Supreme Court later explained and clarified Bouie, stating that the holding was:
rooted firmly in well established notions of due process * * * It's rationale rested on core due process concepts ofnotice, foreseeability, and, in particular, the right to fairwarning as those concepts bear on the constitutionality ofattaching criminal penalties to what previously had been innocentconduct. * * * [W]e couched [Bouie's] holding squarely interms of that established due process right, and not in terms ofthe ex post facto-related dicta to which petitioner points.
(Emphasis sic.) Rogers, at 459 (citations omitted). The court's message that Bouie is limited to issues of due process is clear. Likewise, the Ohio Supreme Court noted that "`[a]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law'" andcan violate due process "even though the constitutional prohibition against ex post facto laws is applicable only to legislative acts." (Emphasis added.) State v. Garner,74 Ohio St.3d 49, 57, 1995-Ohio-168, 656 N.E.2d 623 (quoting Bouie, at 353) and (citing Marks v. United States (1997), 430 U.S. 188,191-192, 97 S.Ct. 990, 51 L.Ed.2d 260). Therefore, we must consider both the state and federal constitutional ramifications of Foster, and we elect to consider the federal issues first.
 Federal Constitutional Considerations {¶ 14} McGhee urges us to find Foster unconstitutional as in violation of the ex post facto clause. For the reasons that follow, we are unable to do so. Due process guarantees notice and a hearing. Since the right to a sentencing hearing has not been implicated by Foster, we are concerned only with the issue of warning as to potential sentences. Looking to the federal circuit courts for guidance, we have discerned three arguments the courts have employed in finding that Booker does not violate the ex post facto clause because there has been no due process violation.
 {¶ 15} Most circuit courts have held that defendants were on notice as to statutory maximums, regardless of whether the federal sentencing guidelines were mandatory. United States v.Duncan (11th Cir. 2005), 400 F.3d 1297. See also UnitedStates v. Pennavaria (3d Cir. 2006), 445 F.3d 720; UnitedStates v. Davenport (4th Cir. 2006), 445 F.3d 366; UnitedStates v. Alston-Graves (D.C. Cir. 2006), 435 F.3d 331; UnitedStates v. Vaughn (2nd Cir. 2005), 430 F.3d 518; UnitedStates v. Dupas (9th Cir. 2005), 419 F.3d 916; and UnitedStates v. Jamison (7th Cir. 2005), 416 F.3d 538. InDuncan, the court found the defendant committed a certain offense, knowing that the possible sentence was life imprisonment. Duncan, at 1307 (citing21 U.S.C. 841(b)(1)(A)(ii)(I)). "The Guidelines at the time also informed Duncan that a judge would engage in fact-finding to determine his sentence and could impose up to a sentence of life imprisonment." Id. (citing 18 U.S.C. 3551 et seq.). The court compared the appellant's argument to similar arguments previously made to and rejected by the United States Supreme Court. Id. at 1307-1308 (quoting Dobbert v. Florida (1977), 432 U.S. 282,97 S.Ct. 2290, 53 L.Ed.2d 344 (citing Chicot Cty. Drainage Dist. v.Baxter State Bank (1940), 308 U.S. 371, 60 S.Ct. 317,84 L.Ed. 329)) ("`the existence of the statute served as an `operative fact' to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted * * * This was sufficient compliance with the ex post facto provision of the United States Constitution'").
 {¶ 16} Likewise, prior to Foster, people who decided to commit crimes were aware of what the potential sentences could be for the offenses committed. R.C. 2929.14(A). In this case, McGhee pled guilty to one count of engaging in corrupt activity, a first degree felony, for trafficking in drugs. The indictment alleged that McGhee engaged in this activity from January 2004 through March 2005. The first of McGhee's individual offenses were committed after Apprendi, but before Blakely; however, the last of McGhee's offenses were committed after Booker. The range of sentences available for a first degree felony remained unchanged during that time. McGhee clearly had notice that a first degree felony carried a potential penalty of three, four, five, six, seven, eight, nine, or ten years in prison. As inDuncan, McGhee knew the court would engage in judicial fact-finding in constructing a sentence within the statutory range. On this reasoning, we cannot find the protections of the due process clause implicated in this case.
 {¶ 17} The Sixth Circuit Court of Appeals found that Booker
did not implicate the ex post facto clause for several reasons.United States v. Barton (6th Cir. 2006), 455 F.3d 649. First, the court held the remedy announced in Booker was not unexpected. Barton, at 653-654. The court noted that the appellant's offenses were committed after Blakely was decided "[t]hus, it would not have been a leap of logic to expect the Supreme Court to apply Blakely to the Guidelines in some manner." Id. The court noted, "defendant offers no argument as to why the remedy selected by the Supreme Court was unexpected." Id. at 654. We find this rationale convincing. As stated above, the criminal activity began after Apprendi, but continued until after Booker, and McGhee has offered no explanation as to why the remedy applied in Booker and Foster was unexpected, especially in Ohio. The Ohio Supreme Court decided Griffin on December 1, 2004, clearly disallowing trial courts from bifurcating the issues of guilt and sentencing in criminal jury trials. See Griffin, supra. While McGhee wishes to be charged with an intimate knowledge of the criminal sentencing statutes and the substantive case law that is beneficial to a defendant, we also impute knowledge to McGhee of the remedial cases, such asGriffin, Booker, and Foster. Again, we fail to see how the protections of due process are implicated.
 {¶ 18} Second, the Sixth Circuit wrote, "[f]or this court to find that notice is a significant concern in this situation, it would have to find that a defendant would likely have changed his or her conduct because of a possible increase in jail time."Barton, at 656. The court went on to write:
it is difficult to see why a person who was intent oncommitting a bank robbery and who was presumably prepared tospend a lengthy period of time in prison if he or she was caughtwould be dissuaded by the prospect of a somewhat longer prisonterm. Notice concerns are, therefore, limited in this case.
Id. We find this reasoning persuasive as well, particularly on the facts of this case, where the defendant continued to commit criminal offenses for more than a year. With each offense, McGhee knew he would be subject to additional punishments if caught. McGhee contends he anticipated a prison sentence of up to nine years for engaging in a pattern of corrupt activity. However, as noted above, he was aware that the court could engage in judicial fact-finding and that the maximum sentence was ten years. Therefore, as the Sixth Circuit noted, notice concerns are limited in this case.
 {¶ 19} Finally, several circuit courts have held that the United States Supreme Court would not order "lower courts to engage in unconstitutional conduct." Barton, supra at 659 (citing Pennavaria, supra; United States v. Wade (8th ir. 2006), 435 F.3d 829; United States v. Austin (5th Cir. 2005), 432 F.3d 598; Vaughn, supra; United States v. Rines
(10th Cir. 2005), 419 F.3d 1104; Jamison, supra; Duncan,
supra). This conclusion is similar to that reached by the Ohio Ninth District Court of Appeals in Newman. While the argument is appealing, we find it unpersuasive. Confronting this argument, the Sixth Circuit Court of Appeals stated, "[d]ue process concerns of the type raised here were not on appeal in Booker.
Thus, the Supreme Court may not have considered the due process implications of its holding. * * * its decision cannot be read as necessarily foreclosing arguments such as those advanced by defendant here." Barton, at 659.
 {¶ 20} Because McGhee knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in Foster violates federal notions of due process as established in Bouie and Rogers.
 State Constitutional Considerations {¶ 21} In construing Ohio's constitution, we must adapt the test for retroactive legislation to apply to retroactive judicial decisions. In determining whether a law violates Section 28, Article II of the Ohio Constitution, we must first evaluate whether the court intended its holding to apply retroactively. See Smith v. Smith, 109 Ohio St.3d 285, 2006-Ohio-2419, at ¶ 6
(quoting Bielat, at 353). In Foster, the court applied its holding retroactively, but only so as to affect cases on direct appeal and those cases pending in the trial courts. Foster, at ¶ 104. The holding operates retroactively because defendants are sentenced according to the law at the time the crime was committed, and the court did not limit its holding to those cases where the offenses were committed on or after February 27, 2006.
 {¶ 22} Even though a law may apply retroactively, it is not necessarily unconstitutional. A substantive retroactive law will be held unconstitutional, while a remedial retroactive law is not. Smith, at ¶ 6 (quoting Bielat, at 353). A statute is substantive if it "`impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction.'" Id. at ¶ 6 (quoting Bielat, at 354) and (citing Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 106-107, 522 N.E.2d 489).
 {¶ 23} For the following reasons, we do not believe the court's holding in Foster creates a substantively retroactive law. As stated above, Foster's holding applies retroactively in a limited number of cases. However, it does not affect a vested right or an accrued substantive right. A vested right "`"so completely and definitely belongs to a person that it cannot be impaired or taken away without that person's consent."'" Smith,
at ¶ 20 (Resnick, J., dissenting) (quoting Harden v. Ohio Atty.Gen., 101 Ohio St.3d 137, 2004-Ohio-382, 802 N.E.2d 1112, at ¶ 9 (quoting Black's Law Dictionary (7th Ed. 1999) 1324)). A vested right is "`more than a mere expectation or interest based upon an anticipated continuance of existing law.'" Id. at ¶ 20 (quoting In re Emery (1978), 59 Ohio App.2d 7, 11,391 N.E.2d 746 (citing Moore v. Bur. of Unemp. Comp. (1943),73 Ohio App. 362, 56 N.E.2d 520)). "`A right, not absolute but dependent for its existence upon the action or inaction of another, is not basic or vested.'" Id. (quoting Emery, at 11 (citing Hatch v.Tipton (1936), 131 Ohio St. 364, 2 N.E.2d 875)).
 {¶ 24} Under S.B. 2, Ohio's sentencing statutes created a "presumption" that a defendant would be sentenced to the lowest prison term of those available for the degree of offense. The statutes created a "presumption" that a defendant would be sentenced to concurrent sentences if more than one offense was committed, and the statutes created a "presumption" that a defendant would not receive the maximum penalty available for any offense. Foster, at ¶ 49 ("Ohio has a comprehensive and complicated felony sentencing plan, both determinate and indeterminate in nature and containing aspects of presumptive sentencing"). By its very definition a presumptive sentence is not guaranteed. A "presumptive sentence" is "[a]n average sentence for a particular crime * * * that can be raised or lowered based on the presence of mitigating or aggravating circumstances." Black's Law Dictionary, (7th Ed. 1999) 1368. Most importantly, the defendant's sentence is dependent on the action of the judge. Even in cases where the State and defendant have negotiated a plea and the State agrees to a recommended sentence, we have not found the court bound by such a recommendation. State v. Smith, 3rd Dist. No. 14-2000-18, 2000-Ohio-1784 (citing State v. Miller (1997),122 Ohio App.3d 111, 701 N.E.2d 390; State v. Tutt (1988), 44 Ohio App.3d 138,541 N.E.2d 1090) ("the decision as to the sentencing of a defendant is within the sound discretion of the trial court and the trial court is not bound by any plea agreement. * * * An appellate court will not reverse a trial court's exercise of discretion in the sentence imposed is within the statutory limit and the trial court considered the statutory criteria."). These cases illustrate that a presumed sentence can be "taken away" without the defendant's consent. Therefore, we cannot find a vested right has been affected by Foster.
 {¶ 25} Nor can we find an accrued substantial right has been affected. A "substantial right" is a "right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). We cannot find that Foster
destroyed a substantial right because defendants are not entitled to enforce or protect specific sentences prior to sentencing. R.C. 2929.14(A) establishes a range of determinative sentences available for each degree of felony offense. Even under S.B.2, defendants could not expect a specific sentence because judges could make findings to sentence anywhere within the range provided by R.C. 2929.14(A). This is true even when the State and a defendant agreed on a recommended sentence, which the trial court opted not to impose. See State v. Smith, 2000-Ohio-1784 (citations omitted). Furthermore, an audit of those sentences challenged under S.B.2's "protections" will indicate the multitude of facts trial courts could rely upon in sentencing under R.C. 2929.14(B); (C); and (E)(4), so that defendants could not predict which facts a court might use in making the statutory findings. A substantial right has not been affected, and therefore, we cannot find that the retroactive application ofFoster is substantive.
 {¶ 26} For the reasons stated above, we cannot find Foster
in violation of Section 28, Article II of the Ohio Constitution or Article I, Section 10 of the United States Constitution. Therefore, the sole assignment of error is overruled.
 {¶ 27} The judgment of the Shelby County Common Pleas Court is affirmed.
Judgment affirmed.
 Shaw and Cupp, JJ., concur.