JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, Joseph Dyer ("Dyer"), appeals his convictions, sentence, and sexual predator classification. Finding some merit to the appeal, we affirm in part, reverse in part, and remand for a new sexual predator hearing.
 {¶ 2} In 2005, Dyer was charged in an eighty-nine count indictment. Counts 1 and 3 accused him of rape, Counts 2 and 4 accused him of kidnapping with a sexual motivation specification, Count 5 accused him of gross sexual imposition, Counts 6 through 54 accused him of pandering sexually oriented matter involving a minor, Counts 55 through 88 accused him of illegal use of a minor in nudity-oriented material or performance, and count 89 accused him of possessing criminal tools.
 {¶ 3} In February 2006, the matter proceeded to a bench trial, at which the court found Dyer guilty of two counts of kidnapping with a sexual motivation specification, three counts of gross sexual imposition, forty-two counts of pandering *Page 2 
sexually oriented matter involving a minor, twenty-two counts of illegal use of a minor in nudity-oriented material or performance, and one count of possessing criminal tools.[1] At a hearing in April 2006, Dyer was sentenced to a total of twenty-five years and four months in prison, with various counts to be served consecutively. The court also designated Dyer a sexual predator and a child victim predator. The following evidence was presented at trial.
 {¶ 4} In 2002, when Dyer's stepdaughter, "B.D.," was approximately seven years of age, Dyer began to sexually abuse her. He would take her to his bedroom at night and undress her. He would then touch her vagina with his penis and rub her breasts. B.D. was afraid to tell her mother, Pamela Dyer, for fear that she would be angry with her. After repeated occurrences, B.D. eventually told her brother, "J.D.," that her stepfather had sexually abused her. This prompted J.D. to share this information with his school counselor. The counselor contacted the Cuyahoga County Department of Children and Family Services ("CCDCFS"), which investigated the complaint.
 {¶ 5} In March 2004, Sally McHugh ("McHugh")[2] of CCDCFS interviewed B.D. and determined that all the children residing with Pamela and Joseph Dyer should be placed in emergency temporary custody with B.D.'s father and *Page 3 
stepmother. During the CCDCFS investigation, the Cleveland police department discovered seventy-seven images of child pornography on Dyer's computer.
 {¶ 6} Dyer now appeals, raising six assignments of error.
 Confrontation Clause {¶ 7} In his first assignment of error, Dyer argues that the trial court erred by violating the Sixth and Fourteenth Amendments of the United States and Ohio Constitutions, which provide the right to confrontation and cross-examination. He also argues that the trial court violated Evid.R. 801 and 802 when it permitted State witnesses to provide inadmissible hearsay testimony. Dyer maintains that McHugh's testimony regarding her interviews with B.D. were inadmissible hearsay which violated Dyer's constitutional rights.
 {¶ 8} As an initial matter, we note that B.D. testified at trial. Therefore, Dyer had the opportunity to cross-examine her as to the statement she made to McHugh.
 {¶ 9} The Sixth Amendment to the United States Constitution provides the following: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." InCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177, the United States Supreme Court examined the admissibility of out-of-court statements that are "testimonial" and their effect on a defendant's right to confrontation under the Sixth Amendment. The *Page 4 Crawford Court held that "testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination." See alsoState v. Siler, 164 Ohio App.3d 680, 2005-Ohio-6591, 843 N.E.2d 863. Thus, Crawford involved statements made by a witness who did not appear at trial.
 {¶ 10} The Court concluded that "testimonial" statements include:
 "Ex parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, * * * extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id.
 {¶ 11} This position was reaffirmed by the United States Supreme Court in Davis v. Washington and Hammon v. Indiana (2006),___ U.S. ___,126 S.Ct. 2266, 2275, 165 L.Ed.2d 224, where the Court noted:
 "Roberts conditioned the admissibility of all hearsay evidence on whether it falls under a `firmly rooted hearsay exception' or bears `particularized guarantees of trustworthiness.' Crawford, 541 U.S., at 60, 124 S.Ct. 1354, 158 L.Ed.2d 177 (quoting Roberts, 448 U.S., at 66, 100 S.Ct. 2531, 65 L.Ed.2d 597). We overruled Roberts in Crawford by restoring the unavailability and cross-examination requirements." Id.
 {¶ 12} Because testimonial statements implicate the Confrontation Clause as construed in Crawford, we will first determine whether B.D.'s statements to McHugh *Page 5 
were testimonial, despite the fact that B.D. testified at trial and was clearly available for cross-examination.
 {¶ 13} In State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482,855 N.E.2d 834, the Ohio Supreme Court directed courts to view statements "objectively when determining whether they implicate Confrontation Clause protection pursuant to Crawford." Id. The Stahl Court held that: "[f]or Confrontation Clause purposes, a testimonial statement includes one made `under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' Id. at paragraph one of the syllabus (Crawford v.Washington (2004), 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177, followed.)" Additionally, "[i]n determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." Id. at paragraph two of the syllabus.
 {¶ 14} Therefore, we conclude that, under the circumstances of the instant case, B.D.'s statements to McHugh are nontestimonial. Our review of the record reveals nothing to indicate that B.D., or a typical child of her age, would have reasonably believed that her statements would be used later for trial.
 {¶ 15} Because we find that the statements are nontestimonial in nature, they are admissible if they fit within a hearsay exception. We find that the statements fall *Page 6 
under Evid.R. 803(4), which provides a hearsay exception for "[statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 16} In State v. Dines (Nov. 1, 1990), Cuyahoga App. No. 57661, this court found that statements made to a sex abuse investigator were admissible under the hearsay exception in Evid.R.803(4). InDines, the sex abuse investigator had a bachelor's degree, but was not a licensed social worker at the time of her interview with the victim. She testified that her function was to "interview purportedly abused children and to insure their safety, as well as to ascertain their emotional and medical needs." Id. The sex abuse investigator would then "relay the information to the appropriate medical personnel to diagnose and treat the child." Id. We held in Dines that:
 "[T]he testimony of a social worker who examines child victims of sexual abuse is an exception to the rule against hearsay pursuant to Evid.R. 803(4); State v. Nelson (Jan. 19, 1989), Cuyahoga App. No. 54905, unreported; State v. Smigelski (Nov. 17, 1988), Cuyahoga App. No. 54532. Cf. State v. Boston (1989), 46 Ohio St.3d 108 (where child's statements admitted through experts rendering opinions and where statements were used to identify one perpetrator)." Id.
 {¶ 17} Moreover, as we found in State v. Chappell (1994),97 Ohio App.3d 515, 646 N.E.2d 1191, courts should look to the function of the social worker to *Page 7 
determine whether the victim's statement could be interpreted as being for diagnosis or treatment. See also, State v. Jones (Dec. 23. 1999), Cuyahoga App. No. 75390.
 {¶ 18} In the instant case, McHugh testified that she has a bachelor's degree, but is not a licensed social worker. She has worked as an intake sex abuse investigator since 1996. She further testified that part of her function when interviewing B.D. was "[t]o assess her [B.D.'s] safety and to make referrals for psychological or medical treatment."
 {¶ 19} Furthermore, B.D. was present at the bench trial and testified as a witness. Therefore, Dyer had the opportunity to cross-examine her as to the statements she made to McHugh, and she was not unavailable for trial. Thus, we find that the statements made to McHugh did not violate Dyer's constitutional rights and were also admissible as statements made for purposes of diagnosis or treatment of B.D.'s mental or physical condition.
 {¶ 20} We also note that this matter proceeded before a judge in a bench trial. This court held in State v. King (Feb. 1, 2001), Cuyahoga App. No. 77566, that: "[i]n a bench trial, the trial court is presumed to rely on only relevant, material evidence in arriving at its judgment," citing State v. Williams (Oct. 12, 2000), Cuyahoga App. No. 77153; State v. Lane (1995), 108 Ohio App.3d 477, 671 N.E.2d 272; andState v. Richey (1992), 64 Ohio St.3d 353, 595 N.E.2d 915. "Therefore, *Page 8 
we assume that the trial court, as trier of fact, relied on relevant, material evidence in making its determination of guilt." Id.
 {¶ 21} As the trier of fact, the judge is presumed to disregard any prejudicial testimony when making a decision. Furthermore, Dyer has failed to show how he was prejudiced by the admission of the "objectionable" testimony. Therefore, we presume that the trial judge relied on only relevant evidence.
 {¶ 22} Accordingly, the first assignment of error is overruled.
 Sufficiency and Manifest Weight {¶ 23} In his second assignment of error, Dyer argues that there was insufficient evidence to sustain his convictions. In his third assignment of error, he argues that his convictions are against the manifest weight of the evidence. Although they involve different standards of review, these assignments of error will be discussed together because they involve the same evidence.
 {¶ 24} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found *Page 9 
the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 25} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra. As the Ohio Supreme Court stated:
 "Weight of the evidence concerns the ` inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 26} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable *Page 10 
doubt. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.
 {¶ 27} In the instant case, Dyer was convicted of two counts of kidnapping pursuant to R.C. 2905.01, which provides: "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) To facilitate the commission of any felony or flight thereafter; * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."
 {¶ 28} Dyer was also convicted of three counts of gross sexual imposition in violation of R.C. 2907.05, which provides: "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * * (4) The other *Page 11 
person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 29} Furthermore, Dyer was convicted of forty-two counts of pandering sexually oriented matter involving a minor pursuant to R.C.2907.322, which provides: "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following: (1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality." He was also convicted of twenty-two counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323, which provides: "(A) No person shall do any of the following: (1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity * * *."
 {¶ 30} Lastly, Dyer was convicted of one count of possession of criminal tools in violation of R.C. 2923.24, which provides: "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 31} Dyer argues that there was insufficient evidence to support his convictions. He maintains that there was no evidence to corroborate B.D.'s allegations. He further contends that there was no evidence to indicate that he *Page 12 
owned the computer containing the pornographic pictures, or that the pictures were of minors. We disagree.
 {¶ 32} In the instant case, the victim, B.D., testified that when she was approximately seven years old, Dyer would take her from her bed at night and into his bedroom. He would undress her and lie on top of her naked. He would rub his penis along the outside of her vagina and rub her breasts. B.D. also recalled hearing the television in another room while she was being abused. She testified that she kept her eyes closed because she was afraid.
 {¶ 33} McHugh testified as a ten-year veteran of sex abuse investigations, and determined that the situation presented an emergency and that B.D. and her siblings should be placed in emergency custody with B.D.'s father and stepmother. B.D.'s mother also testified that she had observed Dyer fondle her daughter in their kitchen.
 {¶ 34} Furthermore, Dyer's wife testified that while she resided with him in Texas, she had observed Dyer viewing on his computer what appeared to be child pornography. The record shows that after CCDCFS became involved in B.D.'s case, Pamela Dyer turned over Dyer's two computers to Cleveland police. The record also demonstrates that Detective King of the Ohio Internet Crimes Against Children Task Force retrieved seventy-seven images of child pornography from Dyer's computer. Detective King identified each person, with a reasonable degree of certainty, as a minor. Furthermore, our review of the record reveals that the *Page 13 
seventy-seven images contained prepubescent females. Thus, in viewing the evidence in the light most favorable to the prosecution, we conclude that Dyer's convictions are supported by sufficient evidence. We also find that the trial court did not lose its way or create such a manifest miscarriage of justice as to require reversal of the convictions.
 {¶ 35} Therefore, the second and third assignments of error are overruled.
 Sentence {¶ 36} In his fourth and fifth assignments of error, Dyer challenges his sentence. He argues that the court erred in ordering him to serve a consecutive sentence without first considering a concurrent sentence and by making findings not supported by the record. He also argues that the court erred when it sentenced him to a maximum sentence without making the appropriate findings.
 {¶ 37} In April 2006, the court sentenced Dyer to a total of twenty-five years and four months in prison, with various counts to run consecutively. In February 2006, the Ohio Supreme Court declared as unconstitutional R.C. 2929.14(E)(4), which governed consecutive sentences, and R.C. 2929.14(C), which governed maximum sentences, and excised the offending parts of the statutes from the statutory scheme.State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, applying United States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738,160 L.Ed.2d 621; Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, *Page 14 159 L.Ed.2d 403; and Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435.
 {¶ 38} In Foster, supra at 61, 64, and 67, the Ohio Supreme Court held that judicial fact-finding to impose the maximum or a consecutive sentence is unconstitutional in light of Blakely. The court also held that "after the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant."Foster, supra at 99. As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive or more than the minimum sentence." Id. at paragraph seven of the syllabus, and State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855,846 N.E.2d 1, paragraph three of the syllabus.
 {¶ 39} Pursuant to Foster, the trial court was not required to make any findings before imposing Dyer's sentence and had full discretion to sentence him within the statutory range. Moreover, the trial court made no findings under the now unconstitutional statutes. Thus, we find no error in the sentences.
 {¶ 40} Dyer also argues that Foster should not apply to his case because his alleged crimes occurred prior to the Foster decision. He claims that his due process rights were violated with an ex post facto application of Foster because the alleged crimes occurred beforeFoster was released. *Page 15 
 {¶ 41} Foster addresses the constitutionality of sentences imposed pursuant to S.B. No. 2, effective July 1, 1996. S.B. 2 is applicable to all offenses committed on or after that date. See State v. Rush,83 Ohio St.3d 53, 1998-Ohio-423, 697 N.E.2d 634, certiorari denied (1999),525 U.S. 1151, 119 S.Ct. 1052, 143 L.Ed.2d 58. Additionally, becauseFoster applies to all cases on direct review, Foster applies to the instant case.
 {¶ 42} We next consider whether Foster violates the Ex Post Facto Clause. The Ex Post Facto Clause of Article I, Section 10 of the United States Constitution prohibits "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." See Rogers v. Tennessee (2001), 532 U.S. 451,121 S.Ct. 1693, 149 L.Ed.2d 697, quoting Calder v. Bull (1798), 3 U.S. 386, 390, 1 L.Ed. 648, (seriatim opinion of Chase, J.). The United States Supreme Court placed similar restrictions on judicial opinions in Bouie v.Columbia (1964), 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894.
 {¶ 43} The Ohio Supreme Court has recognized that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law" and can violate due process "even though the constitutional prohibition against ex post facto laws is applicable only to legislative enactments." State v.Garner, 74 Ohio St.3d 49, 1995-Ohio-168, 656 N.E.2d 623, quotingBouie, *Page 16 
supra, and citing Marks v. United States (1997), 430 U.S. 188, 191-192,97 S.Ct. 990, 51 L.Ed.2d 260.
 {¶ 44} Thus, we must consider both the federal and state constitutional ramifications of Foster. See State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162 and State v. Elswick, Lake App. No. 2006-L-075, 2006-Ohio-7011. With respect to federal constitutional considerations, we note that due process guarantees notice and a hearing. Because the right to a hearing has not been implicated byFoster, we are concerned only with notice given to the defendant as to his potential sentence. In McGhee, supra at Tf 15, the court found that "most federal circuit courts have held that defendants were on notice as to statutory maximums, regardless of whether the federal sentencing guidelines were mandatory." Id. (citations omitted). The McGhee court concluded that:
 "Because [the defendant-appellant] knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in Foster violates federal notions of due process as established in Bouie and Rogers.''' Id. at Tf19.
 {¶ 45} In considering the Ohio Constitution, we must consider the Ohio Supreme Court's intent regarding the retroactive application ofFoster. The court applied its holding retroactively, but only to cases on direct appeal and those pending in the trial courts. Id. at 4|104.Foster applies retroactively because the court did not limit its holding to offenses committed on or after February 27, 2006. *Page 17 
 {¶ 46} A retroactive law is not necessarily unconstitutional."A substantive retroactive law is unconstitutional, while a remedial retroactive law is not.* * * A statute is substantive if it Impairs vested rights, affects an accrued substantive right, orimposes new or additional burdens, duties, obligations, or liabilities as to a past transaction.'" Smith v. Smith, 109 Ohio St.3d, 285, 2006-Ohio-2419,847 N.E.2d 414, quoting Bielat v. Bielat, 87 Ohio St.3d 350, 354,2000-Ohio-451, 721 N.E.2d 28.
 {¶ 47} As the appellate court stated in Elswick, supra:
 "[A] presumed sentence can be `taken away' without the defendant's consent." McGhee at 4|24. Thus, no vested right has been affected by Foster. Id. In addition, no accrued substantial right has been affected. Id. at 4|25. `[Defendants are not entitled to enforce or protect specific sentences prior to sentencing.' Id. A range of determinative sentences available for each degree of felony offense is established in R.C. 2929.14(A). `Even under S.B. 2, defendants could not expect a specific sentence because judges could make findings to sentence anywhere within the range provided by R.C. 2929.14(A).' Id."
 {¶ 48} Furthermore, the Foster court held that the Ohio sentencing scheme was intended to allow trial courts to select sentences within a range. The Foster court explained that:
 "[T]he General Assembly provided a sentencing scheme of `guided discretion' for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range. When mandatory sentences are intended, they are expressed. We, therefore, reject the criminal defendants' proposed remedy of presumptive minimum sentences, for we do not believe that the General Assembly would have limited so greatly the sentencing court's ability to impose an appropriate penalty." Id. at ?89. *Page 18 
 {¶ 49} In the instant case, Dyer had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none had existed. See also, State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715. As a result, we conclude that the remedial holding of Foster does not violate Dyer's due process rights or the ex post facto principles contained therein.
 {¶ 50} Accordingly, we overrule the fourth and fifth assignments of error.
 Sexual Predator Classification {¶ 51} In the sixth assignment of error, Dyer argues that the trial court erred when it classified him as a sexual predator because the State failed to provide sufficient proof of a "likelihood to commit future crime" and the trial court "ignored the expert's findings and conclusions" from the Court Psychiatric Clinic.
 {¶ 52} A sexual predator is defined in R.C. 2950.01(E) as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Therefore, before classifying an offender as a sexual predator, the court must find by clear and convincing evidence that an offender is likely to commit a sexually oriented offense in the future. R.C. 2950.09(B)(4). *Page 19 
 {¶ 53} In State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247,743 N.E.2d 881, the Ohio Supreme Court defined the clear and convincing evidence standard as follows:
 "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Citing Cross v. Ledford (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118.
 {¶ 54} In reviewing a trial court's decision based on clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof. State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54.
 {¶ 55} Pursuant to R.C. 2950.09(B)(3), when making a determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors, including but not limited to the following: the offender's age and prior criminal record, the age of the victim, whether the offense involved multiple victims, whether the offender used drugs or alcohol to impair the victim, whether the offender completed any sentence imposed for any conviction, whether the offender participated in available programs for sexual offenders, any mental disease or disability of the offender, whether the offender engaged in a pattern of abuse or *Page 20 
displayed cruelty toward the victim, and any additional behavioral characteristics that contribute to the offender's conduct. R.C.2950.09(B)(3)(a)-(j).
 {¶ 56} R.C. 2950.09(B)(2) does not require that each factor be met. It requires the trial court to consider those factors that are relevant.State v. Cook, 83 Ohio St.3d 404, 426, 1998-Ohio-291, 700 N.E.2d 570;State v. Grimes (2001), 143 Ohio App.3d 86, 89, 757 N.E.2d 413. "* * * [T]he trial court should consider the statutory factors listed in R.C.2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism." Eppinger, supra at 166.
 {¶ 57} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge." Schiebel, supra at 74, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 58} Dyer argues that the State failed to establish by clear and convincing evidence that he is likely to engage in one or more sexually oriented offenses in the future. He relies on his House Bill 180 assessment and his lack of a prior criminal record.
 {¶ 59} In the instant case, although the trial court was presented with evidence to support the first prong of the definition of a sexual predator pursuant to R.C. *Page 21 2950.01(E), the trial court failed to discuss on the record the particular evidence and factors listed in R.C.2950.09(B)(2), and it failed to state that Dyer was likely to commit future offenses.
 As we stated in State v. Ferrell (Mar. 18, 1999), Cuyahoga App. No. 72732: "In a model sexual predator determination hearing, the prosecutor and defense counsel would take care to identify on the record those portions of the trial transcript, victim impact statements, pre-sentence report and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the second prong of R.C. 2950.01(E). Either side might present expert opinion by testimony or written report to assist the trial court in its determination when there is little information beyond the fact of the conviction itself. The trial court not only would then consider on the record the statutory factors themselves, but in addition would discuss in some detail the particular evidence and factors upon which it relies in making its determination. Finally, it would include evidentiary materials in the record for purposes of any potential appeal." (Emphasis added.)
 {¶ 60} In the instant case, there is little information discussed on the record by the trial court beyond Dyer's current offenses and the trial court's dissatisfaction with the self-reporting assessments. In reaching her decision at the sexual predator hearing, the trial judge stated:
 "I disagree entirely with the House Bill 180 assessment that's been done by the court psychiatric clinic. Clearly, I think with the number of counts in front of me involving children, obscenity involving children, as well as physical crimes against a related child in this case, that defendant should be classified as a sexual predator * * *."
The trial court referred to the number of counts involving children, the obscenity involving children, the access of the internet to children, and the physical crimes against a relative, but did not discuss any factors or specifically find that Dyer was *Page 22 
likely to commit a future sexual offense. See, Eppinger, supra;State v. Artino (May 6, 1999), Cuyahoga App. No. 74054; and State v.Gregory (Sept. 30, 1999), Cuyahoga App. No. 74859. Thus, as a matter of law, we find that the trial court failed to support its sexual predator adjudication with clear and convincing evidence that Dyer was likely to reoffend. Therefore, the sixth assignment of error is sustained.
 {¶ 61} Accordingly, the portion of the trial court's order finding Dyer to be a sexual predator is reversed.
 {¶ 62} Therefore, judgment is affirmed in part and reversed in part, and the case is remanded for a new sexual predator hearing consistent with this opinion.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 23 
JAMES J. SWEENEY, P.J. and
KENNETH A. ROCCO, J. CONCUR
[1] At trial, the State dismissed Counts 77-78 of the indictment.
[2] McHugh is an intake sex abuse worker for the CCDCFS, who was initially assigned to B.D.'s case. *Page 1