JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Mitchiral Smith, appeals his conviction after a jury trial in the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} Smith and his co-defendant, Nashum Johnson, were indicted with two counts of aggravated robbery and two counts of felonious assault. Each count included one-and three-year firearm specifications. Both Smith and Johnson pled not guilty, and a jury trial ensued.
 {¶ 3} At trial, the victim, Rodelio Burton, testified that on June 18, 2005, at approximately 1:45 a.m., he was waiting at the bus stop on the corner of East 65th Street and Broadway Avenue when five young black males approached him on their bicycles. Johnson engaged the victim in a conversation and identified himself as "Eunice's grandson," asking the victim if he remembered him. The victim said he remembered him. Johnson told the victim that he lived around the corner "toward Union on Regent." The victim testified that the group rode away.
 {¶ 4} Approximately five minutes later one of the males, later identified as Smith, returned on his bike and offered to sell the victim drugs. The victim told him no, he was "straight." Smith rode off, but was agitated.
 {¶ 5} A few minutes later, Smith and Johnson returned on their bikes. Johnson pulled out a gun and told the victim to give him everything he had. Johnson snatched the victim's cell phone and blue-tooth wireless earpiece off of him. In the *Page 4 
meantime, Smith went through the victim's bag, which contained personal items and welding tools. Smith took the bag.
 {¶ 6} The victim testified that he quickly walked across the street to the White Castle restaurant, which was open. While crossing the street, the victim heard a gunshot; he turned around and saw Johnson putting the gun in his pocket. The victim continued to walk to the White Castle restaurant, not knowing he had been shot in the left leg.
 {¶ 7} Someone at White Castle called 911. The Cleveland Police and EMS arrived on the scene. The victim told Officer Michael Keane that he knew one of his assailants and that he lived in the neighborhood. The victim was transported to MetroHealth Medical Center where he was treated for a "through and through" gunshot wound.
 {¶ 8} The next day, the victim went to Eunice's house to find out the name of her grandson. The victim then went to the police with Nashum Johnson's name. He was shown a photo array, which included Johnson's photo, and the victim identified Johnson as the person who shot him.
 {¶ 9} Three months later, the victim saw Smith's picture in The Plain Dealer and recognized him as the other assailant. The victim went to the police and filed a supplementary report. A detective compiled a photo array including Smith's picture, and the victim identified Smith as the one who stole his bag. *Page 5 
 {¶ 10} The jury found Smith guilty of two counts of aggravated robbery, but not guilty of the firearm specifications, and not guilty of the felonious assault counts. Smith was sentenced to four years on each count to run concurrent to each other but consecutive to his other cases.
 {¶ 11} Smith appeals, advancing four assignments of error for our review. His first assignment of error states the following:
 {¶ 12} "Appellant's convictions for aggravated robbery are not supported by sufficient evidence where the state of Ohio failed to prove that the defendant participated in the incidents."
 {¶ 13} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} Smith argues that the state failed to present sufficient evidence of Smith's identity or that he aided and abetted Johnson in the crimes. Specifically, Smith argues that the victim's identification of Smith is untrustworthy because he did not have an adequate opportunity to observe the second assailant because of the lighting conditions and the fact that the victim had his attention focused on the gun *Page 6 
that was pointed at his chest. In addition, the victim's identification came three months after the crime.
 {¶ 15} In State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus, the Supreme Court of Ohio held as follows: "[t]o support a conviction for complicity by aiding and abetting pursuant to R.C.2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." The testimony at trial revealed that Smith and Johnson were talking to each other during the robbery, which is evidence that they were working together. In addition, Smith assisted by going through the victim's bag and taking it.
 {¶ 16} With regard to the identification, the victim observed and spoke with Smith immediately prior to the robbery, when Smith attempted to sell the victim drugs. In addition, the victim saw Smith again five minutes later when Smith and Johnson returned to rob him. The victim was able to recognize Smith from his picture in The Plain Dealer as the second assailant. Also, the victim positively identified Smith from a photo array wherein a different picture was used. Last, the victim identified Smith in court.
 {¶ 17} After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved *Page 7 
beyond a reasonable doubt. Accordingly, Smith's first assignment of error is overruled.
 {¶ 18} Smith's second assignment of error states the following:
 {¶ 19} "The jurors' verdict is against the manifest weight of the evidence."
 {¶ 20} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Leonard, 104 Ohio St.3d 54, 68,2004-Ohio-6235 (internal quotes and citations omitted).
 {¶ 21} Under this assignment of error, Smith argues that the victim's identification and participation in the crime is against the manifest weight of the evidence. In addition, Smith argues that because the jury acquitted Smith of the two counts of felonious assault, as well as the firearm specifications for the aggravated robberies, the jury must have harbored doubts that Smith was involved in the plan to rob the victim.
 {¶ 22} We find Smith's arguments to be without merit. The testimony at trial was that Smith was equally involved in the robbery but did not have control over the *Page 8 
gun or use the gun. There is no indication in the record that the victim's identification of Smith as his second assailant was incredible or manufactured. We therefore find that there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. The jury did not lose its way. Accordingly, Smith's second assignment of error is overruled.
 {¶ 23} Smith's third assignment of error states the following:
 {¶ 24} "Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when his counsel failed to offer expert testimony on eyewitness identification."
 {¶ 25} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102. *Page 9 
 {¶ 26} Smith argues that his attorney was ineffective because he failed to offer expert testimony regarding eyewitness identification.
 {¶ 27} As an initial matter, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." State v. Nicholas (1993), 66 Ohio St.3d 431,436, citing State v. Thompson (1987), 33 Ohio St.3d 1, 10-11. Thus, the defense counsel's decision to rely on cross-examination should be viewed as a legitimate "tactical decision." State v. Hartman,93 Ohio St.3d 274, 299, 2001-Ohio-1580.
 {¶ 28} Finally, resolving this issue in defendant's favor would be purely speculative. Id. "Nothing in the record indicates what kind of testimony an * * * expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal." State v. Madrigal (2000), 87 Ohio St.3d 378, 390-391
(rejecting a claim of ineffectiveness for counsel's failure to utilize an expert on eyewitness identification); State v. Carter (2000),89 Ohio St.3d 593, 606 (rejecting a claim of ineffectiveness for counsel's failure to pursue MRI testing in the penalty phase). Thus, we reject Smith's claim that counsel's failure to offer expert testimony on eyewitness identification constituted ineffective assistance of counsel. Accordingly, Smith's third assignment of error is overruled.
 {¶ 29} Smith's fourth assignment of error states the following: *Page 10 
 {¶ 30} "Appellant was deprived of his liberty without due process of law when he was sentenced under a judicially altered, retroactively applied, and substantially disadvantageous statutory framework."
 {¶ 31} Smith argues that the trial court should have imposed a minimum concurrent term of imprisonment in his case. Smith asserts that the retroactive application of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, to his sentence violates both his right to due process and the Ex Post Facto Clause of the United States Constitution.
 {¶ 32} In State v. Dyer, Cuyahoga App. No. 88202, 2007-Ohio-1704, this court addressed similar due process and ex post facto claims. Due process guarantees notice and a hearing; however, this court stated "[b]ecause the right to a hearing has not been implicated byFoster, we are concerned only with notice given to the defendant as to his potential sentence." Id. Here, Smith had notice that the sentencing range was the same at the time he committed the offenses as it was when he was sentenced. Therefore, Smith's due process rights have not been violated.
 {¶ 33} The Ex Post Facto Clause of Article I, Section 10 of the United States Constitution prohibits "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." The United States Supreme Court placed similar restrictions on judicial opinions in Bouie v. Columbia (1964),378 U.S. 347. Dyer, supra. *Page 11 
 {¶ 34} A retroactive law is not necessarily unconstitutional if it is remedial. "Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none had existed." Id. See, also, State v.Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715. As a result, we conclude that the remedial holding of Foster does not violate Smith's due process rights or the ex post facto principles contained therein. Accordingly, Smith's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., J., and KENNETH A. ROCCO, J., CONCUR *Page 1