OPINION
{¶ 1} Defendant-appellant, Norman Andrews, appeals the decision of the Butler County Court of Common Pleas sentencing him to a longer sentence following the reversal and remand of his original sentence.[1]
 {¶ 2} In September 2004, appellant was indicted on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). The charges stemmed from two incidents that occurred at appellant's house during which appellant touched the genitals of a young girl who was under 13 years of age. At the time of the incidents, appellant's wife provided childcare to several children in the home she shared with appellant. The incidents occurred while the victim was in the care of appellant's wife. The matter proceeded to a jury trial. The victim testified about the incidents. Appellant's granddaughter, 12 years old at the time of the trial, testified that appellant had similarly touched her. Appellant was found guilty on one count of gross sexual imposition and acquitted on the other count. On April 12, 2005, the trial judge sentenced him to three years in prison. An entry setting appellant's appellate bond provided that "[t]he travel, association or place of abode of the person during the period of release is restricted as follows: No contact with the victim or any other minor children."
 {¶ 3} Appellant appealed his conviction and sentence. We upheld appellant's conviction but reversed his sentence and remanded the case to the trial court for resentencing based upon the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. SeeState v. Andrews, Butler App. No. CA2005-04-088, 2006-Ohio-2021.
 {¶ 4} Upon remand, the trial court held a new sentencing hearing on May 18, 2006. The hearing revealed that while out on bond, appellant had contact on several occasions with minor grandchildren in his home. The hearing also revealed that on the day deputies went to arrest him for violating the bond order, the mother of the visiting minor grandchildren was in the garage with the children trying to keep them quiet. As a result of appellant's violation of the bond order and his continued lack of remorse, the state asked the trial court to impose a greater sentence.
 {¶ 5} By entry filed May 23, 2006, the same trial judge sentenced appellant to four years in prison. The trial judge specifically found that:
 {¶ 6} "When we were here previously, the Court * * * issued a sentence that it feels appropriately struck the balance between what it viewed as the very serious nature of the conduct, but also gave recognition to the fact that Mr. Andrews was a 66 to 67 year-old man with serious medical concerns, that he was evaluated by Dr. Hopes and found to be a low risk to reoffend, and that he had never had a previous criminal conviction, that he had served his country honorably. I tried to balance that against the seriousness of this offense, and I came to the conclusion that the three-year prison term was appropriate.
 {¶ 7} "When I am reviewing it now, the Court has to consider the fact that although there is no evidence before the Court, that during the time of the appellate bond * * * Mr. Andrews reoffended against any child, there was a clear order placed on Mr. Andrews, and the Court distinguishes there are times when it's appropriate to put on an order that says no unsupervised contact. Sometimes there is an order that says no contact with an unrelated minor. The language that the Court used this time was `no contact with the victim or any other minor children,' period.
 {¶ 8} "His family put up $100,000 of equity of their house to allow him to remain out while he exercised his right to appeal, and the Court has to look at what occurred during that time period, that Mr. Andrews would give so little heed and respect to that order of the Court that was specifically imposed because this offense did occur in his house with children that he had a position of trust over. And I did not want that situation to be present again. And in spite of that, we're now here at resentencing, and I am seeing that he was not able to abide by that order. He disregarded it.
 {¶ 9} "* * *
 {¶ 10} "The Court has not been presented with any information that during the time that you did have that you utilized that to engage in any type of counseling, to do anything that would have further mitigated your situation, but instead continued to show an apparent lack of remorse and violate the orders of the court.
 {¶ 11} "So taking that into consideration, the Court is going to find that having weighed the purposes and principles of felony sentencing under [R.C.] 2929.11and having weighed and balanced the seriousness factors and recidivism factors under [R.C.] 2929.12 that, again, the defendant is not amenable to available community [control] sanctions and that a prison term is appropriate, and the Court is going to hereby impose a prison term of four years[.]
 {¶ 12} "Mr. Andrews, it's not uncommon that any time I have individuals that come before me for sentencing, the Court considers their behavior on bond in every case. It's an indication to me as to whether they can follow the law, whether they can be supervised. You've not indicated a willingness to do that. And the fact whether you say it was because you didn't read the order, well, that's not on the Court. That's your responsibility, Mr. Andrews, especially when your father puts up $100,000, their home, I would think that you would know exactly what the rules were.
 {¶ 13} "* * *
 {¶ 14} "And I want it to be clear for the record that the Court is aware of its obligations under North Carolina v. Pierce [sic] to reimpose the same sentence unless there are additional facts that become known to the court since the time of the last sentencing that merit the increase in the sentence, and that the increase in the sentence is based on that additional information that has been presented to the Court."
 {¶ 15} This appeal follows in which appellant raises two assignments of error.
 {¶ 16} Assignment of Error No. 1:
 {¶ 17} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY RE-SENTENCING APPELLANT TO A HARSHER SENTENCE FOLLOWING AN APPEAL WHICH VIOLATED HIS RIGHTS UNDER THE DUE PROCESS CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 18} Appellant argues that the new, harsher sentence imposed by the trial judge following the successful appeal of his original sentence was a result of vindictiveness in violation of his due process rights andNorth Carolina v. Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072. Appellant contends that there was no new information presented at the resentencing hearing to warrant the harsher sentence.
 {¶ 19} In Pearce, the United States Supreme Court set aside the sentence of a state prisoner who had successfully appealed his conviction but upon remand was given a harsher sentence. The Supreme Court held that "neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's `life, health, habits, conduct, and mental and moral propensities.'" Id. at 723.
 {¶ 20} However, "[d]ue process of law * * * requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. * * * In order to assure the absence of such a motivation, * * * whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing." Id. at 725-726. The Supreme Court set aside Pearce's new sentence after finding that the state had advanced absolutely no reason for the increased sentence.
 {¶ 21} In Wasman v. United States (1984), 468 U.S. 559,104 S.Ct. 3217, the Supreme Court clarified its Pearce holding by making it "clear * * * that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights." Id. at 568 (emphasis sic). The Supreme Court reiterated that "a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." Id. at 572. The Supreme Court stated that the fact that Wasman received a greater sentence following retrial was sufficient to engage the presumption of vindictiveness ofPearce. However, the court found that the reasons given by the trial court for imposing the greater sentence, that is, Wasman's new criminal conviction between his initial sentence and his resentencing, "amply rebut[ted] any presumption of vindictiveness." Id. at 569-570.
 {¶ 22} The Supreme Court addressed the presumption of judicial vindictiveness again in Texas v. McCullough (1986), 475 U.S. 134,106 S.Ct. 976: "Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather simply enlarged sentences after a new trial." Id. at 138. With regard to new information, the court stated that "[n]othing in the Constitution requires a judge to ignore `objective information justifying the increased sentence.'" Id. at 142. The court "recognized the state's legitimate interest `in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal laws.'" Id. at 144. The court held that the 50-year sentence imposed upon McCullough for murder by the trial judge after retrial was not the result of vindictiveness even though the jury at the first trial had imposed a sentence of only 20 years. In increasing the sentence, the trial judge relied on new evidence that was not presented at the first trial, including the fact that McCullough had been released from prison only four months before committing murder.
 {¶ 23} In the case at bar, although appellant was given a harsher sentence by the same trial judge, we question whether the presumption of vindictiveness automatically applies when a defendant is resentenced as a result of the Ohio Supreme Court's decision in Foster. As the Third Appellate District stated in State v. Wagner, Union App. No. 14-06-30,2006-Ohio-6855: "[a]t the outset, we are not convinced that the traditional review for vindictiveness [under Pearce and its progeny] following an appeal * * * is specifically applicable to sentencings underState v. Foster, where the original sentence has not simply been found to be in error but has been found to be void. Wagner at ¶ 10 (Emphasis sic). Indeed, resentencing cases under Foster all involved an original sentence that was the result of constraint imposed by a sentencing factor which the Ohio Supreme Court subsequently determined to be unconstitutional. See id. at ¶ 11. These are different from cases in which a trial judge has been reversed for erroneously applying the law.
 {¶ 24} However, assuming without finding that the presumption of vindictiveness applies here, we find that the findings of the trial judge overcome that presumption. It is undisputed that there was no evidence appellant reoffended against any child while out on bond. We also agree with appellant that his continued lack of remorse and continued refusal to seek treatment were not new information at the resentencing hearing. Such was not the case, however, with regard to appellant's violation of the bond order.
 {¶ 25} Appellant argues that his violation of the bond order was not newly discovered information because at the original sentencing hearing, the trial judge (briefly) referred to the granddaughter's trial testimony, the fact that there were multiple victims, and that "there [were] children * * * still present in the home, grandchildren[.]"
 {¶ 26} Upon thoroughly reviewing the transcript of the original sentencing hearing and the resentencing hearing, we cannot say that appellant's violation of the bond order was information that was similar to the evidence presented at the original hearing. In addition, appellant's attorney acknowledged at the resentencing hearing that there were new facts for the trial judge to consider, but asked the judge to also consider appellant's explanation for the violation of the order, namely, that he was never alone with the children, and that he and his family mistakenly believed, based upon his previous attorney's advice, that contact with his minor grandchildren was permitted.
 {¶ 27} As the trial judge pointed out during the resentencing hearing, the judge could have issued a bond order forbidding any contact with an unrelated minor. However, because a granddaughter was allegedly a victim of appellant, even though appellant was never convicted for it, the trial judge unequivocally forbade appellant to have any contact with any minor child. The bond order could not have been any clearer. Even if appellant did not seek contact with his grandchildren, as he asserts, he did allow himself to have contact with them in clear violation of the order. A trial judge can impose a new, greater sentence in light of the conduct of a defendant or events subsequent to the original sentencing proceedings that throw new light upon the defendant's conduct and mental and moral propensities. See Wasman, 468 U.S. at 570-572. Punishment should fit the offender and not merely the crime. See Pearce,395 U.S. at 723.
 {¶ 28} We find that appellant's violation of the bond order constituted new, objective information concerning identifiable conduct on the part of appellant occurring after the time of the original sentencing proceeding. See Pearce. The trial judge affirmatively stated upon the record that appellant's violation of the order was the main reason for imposing the harsher sentence. We find that this new objective information amply rebutted any presumption of vindictiveness and justified appellant's increased sentence. The first assignment of error is overruled.
 {¶ 29} Assignment of Error No. 2:
 {¶ 30} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPOSING THE SENTENCE IT DID BECAUSE THE SENTENCE VIOLATED APPELLANT'S RIGHTS UNDER THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 31} Appellant argues that the severance remedy outlined inFoster violates the ex post facto and due process clauses of the Ohio and United States Constitutions because it effectively raises the presumptive sentences for first-time offenders. Under the sentencing statute in effect during appellant's initial sentencing, there was a presumption appellant would be sentenced to a minimum sentence of one year. Appellant argues that the Foster decision erased a presumption that was beneficial to him, which was a remedy not anticipated.
 {¶ 32} We recently addressed and rejected a similar argument inState v. Doyle, Brown App. No. CA2005-11-020, 2006-Ohio-5373, in which we adopted the reasoning of the Second Appellate District in State v.Smith, Montgomery App. No. 21004, 2006-Ohio-4405 (which, in turn, relied on the rationale in United States v. Jamison [C.A.7, 2005],416 F.3d 538). In the case at bar, appellant knew his action constituted a crime when he touched the genitals of his victim. The statutory range of punishment appellant faced before the decision in Foster was between one and five years, and after Foster, appellant still faced between one and five years when his case was remanded for resentencing. Appellant was aware of the possible sentence he faced when committing the crime of gross sexual imposition.
 {¶ 33} Other Ohio appellate courts have likewise rejected the argument that a sentence imposed after a remand for resentencing underFoster violates due process rights because the effect of Foster is to create an ex post facto law. Those appellate courts found that the argument essentially sought the benefit of Foster's substantive holding without the burden of the remedial holding. In State v. Paynter, Muskingum App. No. CT2006-0034, 2006-Ohio-5542, the Fifth Appellate District found that "[a]ppellant essentially seeks the benefit of a state of law that never existed; * * * appellant was never guaranteed that he would receive the minimum prison term. However, that is the result that the appellant would have this court mandate by retroactively applying the constitutional decision in Foster while refusing to apply the remedial holding in Foster." Id. at ¶ 28, 39.
 {¶ 34} "[E]ven if the remedial holding in Foster were not applied in the case of an offender who has not previously served a prison sentence, such as appellant, trial courts would have the discretion to overcome the minimum sentence pursuant to R.C. 2929.11 and R.C. 2929.12. As these statutes were in existence at the time appellant committed the crimes, [and were found to be constitutional in Foster], the appellant had sufficient warning of the potential consequences of his actions to satisfy * * * due process concerns[.]" Id. at ¶ 40.
 {¶ 35} In State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162, the Third Appellate District held that Foster did not violate Section28, Article II of the Ohio Constitution or Article I, Section 10 of the United States Constitution. Id. at ¶ 26. With regard to federal constitutional considerations, the appellate court found that "[b]ecause McGhee knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in Foster violates federal notions of due process as established in Bouie [v. Columbia (1964),378 U.S. 347, 84 S.Ct. 1697] and Rogers [v. Tennessee (2001), 532 U.S. 451,121 S.Ct. 1693]." Id. at ¶ 20.
 {¶ 36} With regard to state constitutional considerations, the appellate court found that the supreme court's holding inFoster did not create a substantively retroactive law. Id. at ¶ 23. "As stated above, Foster's holding applies retroactively in a limited number of cases. However, it does not affect a vested right or an accrued substantive right." Id. See, also, State v. Elswick, Lake App. No. 2006-L-075, 2006-Ohio-7011 (following McGhee).
 {¶ 37} In light of the foregoing, we once again find thatFoster does not violate the ex post facto and due process clauses. The second assignment of error is overruled.
 {¶ 38} Judgment affirmed.
POWELL, P.J. and WALSH, J., concur
[1] 1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.