JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Shonnell Bradley, appeals a judgment of the Cuyahoga County Court of Common Pleas finding him guilty of felonious assault with one-year and three-year firearm specifications and sentencing him to eleven years in prison. After reviewing the facts and the pertinent law, we affirm.
 {¶ 2} On March 31, 2006, the Cuyahoga County Grand Jury indicted Bradley on one count of attempted murder, in violation of R.C.2923.02/2903.02, with one-and three-year firearm specifications, two counts of felonious assault, in violation of R.C. 2903.11, with one-and three-year firearm specifications, and two counts of aggravated robbery in violation of 2911.01, with one-year and three-year firearm specifications. He entered a plea of not guilty to the charges. A jury trial commenced on August 23, 2006. The following testimony was offered at trial. *Page 3 
 {¶ 3} The state first presented Robert Sweany ("Officer Sweany"), a Cleveland police officer. On January 9, 2006, he worked with Mike Kitchen ("Officer Kitchen"). They parked their patrol car at a gas station at the corner of East 49th Street and Fleet Avenue. He testified that after 10:00 p.m., "a gold colored Toyota comes barrelling [sic] into the parking lot, pulls in next to us, and we can see this guy bleeding profusely from the face. He gets out of the vehicle and falls to the ground, and said he's been shot in the face."
 {¶ 4} Officer Sweany testified that Officer Kitchen asked the victim who shot him and he replied, "Yellow Boy." Officer Sweany said that the victim told them, "[t]he last number in my cell phone is the guy that shot me." Officer Kitchen retrieved the victim's cell phone and looked at the last number.
 {¶ 5} The victim told them that the shooting happened by "the Gazi store." Officer Sweany stated that he patrols that area, and the store is located at the corner of East 54th Street and Fleet Avenue. He and Officer Kitchen drove to a house that is located next to the store, at 5409 Fleet Avenue. Mike Qualey ("Detective Qualey") of the Cleveland Police Department, also met them at the scene. They interviewed people in an attempt to get a description of the shooter. David Hart ("victim") testified that on January 9, 2006, at approximately 10:00 p.m., he drove to a home on Fleet Avenue, next to Gazi's Market. He stated, "my friend was in jail and he *Page 4 
asked me to pick up some money from [Bradley], and put it on his books."[1] The victim said that Bradley had expected him to come over because Bradley called him. The state asked the victim, "[w]as that the last received number on your cell phone, sir?" He replied, "[p]robably so, yes." He stated that he had also called the phone number when he got to the house, so the phone number was listed in his "dialed and received" call log.
 {¶ 6} The victim said that Bradley got in his car and they talked. He never asked him for money because he expected Bradley to give it to him. He testified that Bradley got out of the car, reached back in the car, and then shot him in the face. The state asked the victim, "he shoots you that way, and it goes through your jaw, out of your neck and into your arm and it ends up in your arm* * *?" He replied, "[y]es." The victim said that Bradley told him to empty his pockets, so he threw his money out the window.
 {¶ 7} The victim stated that he drove to a gas station for help. He saw a police officer, and told the officer that he had been shot. He explained to the police officer that the last phone number in his cell phone belonged to the guy who shot him. The state asked, "[d]id you give him a name before you slipped into unconsciousness?" The victim replied, "I gave him two names. I told them the one name what his cousin told me was Yellow Boy and then he told me his name is *Page 5 
Shonnell. I had to do something. I told him the name is Shonnell." He also told the police officer that he had been shot at the house by Gazi's Market.
 {¶ 8} On January 11, 2006, Detective Qualey interviewed the victim at the hospital. The victim stated that he could not speak, so he communicated by nodding his head and writing. He testified that he could not identify Bradley from a photo array. He said that he wrote the name Shonnell, on a piece of paper so that the detectives would know who shot him. He indicated to the detectives that Bradley came out of the side door at 5409 Fleet Avenue.
 {¶ 9} On January 13, 2006, the victim spoke to detectives and identified Bradley from a photo array as the man who shot him. He also testified that in 1996, he was convicted of drug abuse and attempted corruption of a minor.
 {¶ 10} On cross-examination, the victim stated that Bradley stood "not even six inches away" and shot him one time with an automatic gun. He further stated that Detective Qualey told him that they found a forty-five-caliber shell casing in the victim's car.
 {¶ 11} The victim denied that he told hospital personnel that he was shot by an unknown assailant. The victim denied that he was a drug dealer and that he met Bradley to get money Bradley owed him for selling drugs. The victim also denied that someone in the back seat of his car pointed a gun at Bradley, and then Bradley pushed the gun as it discharged at his face. *Page 6 
 {¶ 12} Jenita Curlee, ("Bradley's mother") testified that she lives upstairs at 5409 Fleet Avenue. She said that Bradley did not live with her and she did not see him on January 9, 2006. She also stated that she kept her side door locked.
 {¶ 13} Bradley's mother testified that on January 9, 2006, she heard a "boom." She said that she looked out her window and saw a car in her driveway. She went outside and noticed the driver, passenger, and back passenger car doors were all open. She walked to the car and saw a man bleeding. The car then sped out of the driveway. She did not see any other males in the area or money on the ground.
 {¶ 14} Detective Qualey of the Cleveland police vice unit responded to a call about a male being shot at East 49th Street and Fleet Avenue. He looked inside a Toyota Camry and saw that the front seat was covered in blood. He noticed a cell phone on the console with blood on it and a shell casing on the passenger floorboard. It was determined that the shell casing came from a forty-five-caliber gun.
 {¶ 15} The victim had indicated to police that the last number received in his cell phone belonged to the shooter. He said that one of the officers on the scene went through the call log of the victim's cell phone and recorded the last phone number received. Detective Qualey issued a subpoena to the cell phone provider, which indicated that the number belonged to Bradley. Detective Qualey also investigated the name "Yellow Boy" and he determined that a male named Michael Tolar had used it as an alias. *Page 7 
 {¶ 16} Detective Qualey stated that on January 11, 2006, he interviewed the victim at the hospital. He said that the victim could not speak but communicated by shaking his head and grunting. On that day, the victim did not recognize the shooter in the photo array. He said that the victim motioned for his pen and wrote the name Shonnell and nodded when asked if that was the person who shot him. Detective Qualey testified, "[s]o at that time, he had indicated to me that the person who shot him in the head was named Shonnell."
 {¶ 17} The next day, Detective Qualey questioned Bradley's mother about Bradley. She told Detective Qualey that Bradley was her son, and she told him his last name and date of birth. She also said that her side door would have been locked during the shooting.
 {¶ 18} Detective Qualey located a photograph of Bradley in the Bureau of Motor Vehicle database and placed it in a photo array. On January 13, 2006, he showed the photo array to the victim. The victim identified Bradley as the person who shot him.
 {¶ 19} The state rested its case and dismissed count two, felonious assault, and count five, aggravated robbery. Bradley moved the court for Crim.R. 29 acquittal. The court denied the motion.
 {¶ 20} Bradley took the stand in his own defense. He testified that he called the victim for drugs. Bradley stated that he had sold drugs twice and gave half of the money to the victim. He said that the second time he sold the drugs, he "messed *Page 8 
up" the packaging and made only half of the money he should have. He did not give the victim any money that time. He said that he heard the victim was looking for him.
 {¶ 21} On January 9, 2006, he called the victim and told him that he would not have his money until the following month. Bradley said that the victim drove to Bradley's mother's house and Bradley got in the passenger side of the car. Bradley stated that the victim said to him, "[w]hat you're saying, you ain't going to give me money?" Bradley testified, "that's when the dude in the back pulled out the gun, boom. He said, empty your pockets. * * *[W]hat I did, adrenaline rush, boom, I hit his hand. I don't know where the gun going off, but I jumped out of the car and I run." Bradley stated that the man in the back seat pointed a gun at the left side of his face, and that he pushed the gun toward the victim who sat in the driver's seat, and the gun discharged in the victim's face.
 {¶ 22} On cross-examination, Bradley testified that the phone number listed in the subpoena was his cell phone number. He stated that he had previously seen the victim with the male who sat in the back seat of the car, who he knew only by his street name "Black."
 {¶ 23} Bradley rested his case and renewed his Crim.R. 29 motion, which the trial court denied. After deliberation, the jury found Bradley not guilty of count one, attempted murder, in violation of 2923.02/2903.02 and count four, aggravated robbery, in violation of 2911.01. However, the jury found him guilty of count three, *Page 9 
felonious assault, in violation of R.C. 2903.11, including the one-and three-year firearm specifications.
 {¶ 24} On September 1, 2006, the court sentenced Bradley to eight years in prison for the felonious assault. The court also sentenced Bradley to three years for the mandatory firearm specification that the court merged for purposes of sentencing with the one-year firearm specification, to run prior to and consecutive with the felonious assault sentence. Thus, Bradley was sentenced to a total of eleven years in prison. The court also informed Bradley that he would have to serve three years of post-release control following his release from prison.
 {¶ 25} It is from this judgment that Bradley appeals and asserts the following assignments of error:
 {¶ 26} "[1.] The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant.
 {¶ 27} "[2.] Appellant's convictions are against the manifest weight of the evidence.
 {¶ 28} "[3.] The trial court erred when it sentenced Appellant to a maximum sentence."
 {¶ 29} In his first assignment of error, Bradley asserts that the trial court erred when it denied his motion for acquittal because there is insufficient evidence that he *Page 10 
fired the gun, which injured the victim. Bradley maintains that someone else fired the gun.[2]
 {¶ 30} In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court of Ohio explained that sufficiency of the evidence and weight of the evidence are not synonymous legal concepts. They are "both quantitatively and qualitatively different." Id.
 {¶ 31} The high court further explained:
 {¶ 32} "[w]ith respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida *Page 11 
(1982), 457 U.S. 31, 45 * * *, citing Jackson v. Virginia
(1979), 443 U.S. 307 * * *." (Parallel citations omitted.) Id. at 386-387.
 {¶ 33} When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. State v.Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at ¶ 17. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 34} In the case at bar, Bradley was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 35} A review of the record indicates that there was sufficient evidence to support a conviction. Bradley sat in the passenger seat of the victim's car when the victim was shot. A shell casing was found on the passenger floorboard. The bullet went through the victim's jaw, out his neck, and into his arm.
 {¶ 36} The victim told Officer Sweany and Officer Kitchen that he had been shot by the person who last called his cell phone, which was determined to be *Page 12 
Bradley. In the hospital, Detective Qualey asked the victim who shot him, and he wrote the name Shonnell. The victim also identified Bradley from a photo array.
 {¶ 37} After reviewing the testimony of the witnesses in a light most favorable to the state, as well as the respective elements of the offense, we conclude the evidence is sufficient to convict Bradley of felonious assault beyond a reasonable doubt. Thus, Bradley's first assignment of error is overruled.
 {¶ 38} In his second assignment of error, Bradley asserts that his convictions were against the manifest weight of the evidence. Bradley contends that his actions did not proximately cause the victim's injuries.
 {¶ 39} In Thompkins, supra at 387, the Supreme Court of Ohio stated:
 {¶ 40} "[although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. [State v. Robinson (1955), 162 Ohio St. 486, 487]. Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' (Emphasis added.) Black's, supra, at 1594. *Page 13 
 {¶ 41} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs v.Florida, 457 U.S. 31, 42]. See, also, State v. Martin (1983),20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
 {¶ 42} In addition, when assessing witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. The factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. Warren v.Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 3.
 {¶ 43} With this standard in mind, we conclude that Bradley's conviction was not against the manifest weight of the evidence. Bradley and the victim both testified *Page 14 
that Bradley sat in the passenger seat of the victim's car when the victim was shot. Detective Qualey stated that a shell casing was found on the passenger floorboard.
 {¶ 44} The victim told police that he had been shot by the person who last called his cell phone. Detective Sweany also stated that the victim told him that he was shot by the person who last called his cell phone. The victim further said that he told police that he was shot by Shonnell. A subpoena was issued for the last number received in the victim's cell phone and the cell phone number belonged to Bradley. Bradley also confirmed that the cell phone number belonged to him.
 {¶ 45} The victim testified that he wrote Shonnell's name on a piece of paper so the detectives would know who shot him. Detective Qualey also stated that the victim wrote Shonnell's name. The victim said that he identified Shonnell from a photo array as the man who shot him. Detective Qualey also confirmed that the victim identified Bradley from a photo array.
 {¶ 46} However, Bradley argues that there was a third person in the back of the vehicle who pointed a gun at him, and when he pushed the gun away, it discharged in the victim's face. Bradley's mother testified that when she went outside, she saw that the vehicle's back passenger door was open.
 {¶ 47} The jury, as the factfinder, was free to believe all or part of the testimony presented at trial. After reviewing the testimony, we cannot conclude that the trier of fact lost its way. Thus, there was not such a "manifest miscarriage of justice" that *Page 15 
the conviction should be reversed and a new trial ordered. Accordingly, Bradley's second assignment of error is overruled.
 {¶ 48} In his third assignment of error, Bradley asserts that the trial court did not make the proper findings when it imposed the maximum sentence.
 {¶ 49} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph two of the syllabus, the Supreme Court of Ohio held that R.C.2929.19(B)(2) no longer requires judicial fact finding before a prison sentence is imposed within the appropriate range of R.C. 2929.14(A). Moreover, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., at paragraph seven of the syllabus. Thus, in the case at bar, the trial court had full discretion to impose the maximum sentence.
 {¶ 50} Although the trial court is not required to make findings or give reasons for imposing the maximum sentence, the trial court did so here. At the sentencing hearing, the trial court explicitly said, "[f]rankly, a shot in the face and to the jaw, which is very close to a homicide case, is, in this Court's opinion, the worst form of felonious assault." The court also stated that Bradley showed no remorse, and it would demean the seriousness of the offense to sentence him to a shorter prison term.
 {¶ 51} Additionally, Bradley contends that we are precluded from applying Foster because it violates the Ex Post Facto Clause, Section 10, Article I of the *Page 16 
United States Constitution, and the Retroactivity Clause, Section 28, Article II of the Ohio Constitution, which in turn, violates his due process rights.
 {¶ 52} This court recently addressed this issue and rejected it inState v. Mallette, 8th Dist. No. 87984, 2007-Ohio-715. See, also,State v. Dawson, 8th Dist. No. 88485, 2007-Ohio-2761. InMallette, after a thorough analysis of federal and state law, we concluded:
 {¶ 53} "[Defendant] had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced.Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding ofFoster does not violate [appellant's] due process rights or the ex post facto principles contained therein."[3]
 {¶ 54} Thus, Bradley's third assignment of error is overruled.
 {¶ 55} Accordingly, the judgment of the Cuyahoga County Court of Common *Page 17 
Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J. CONCURS; COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY.
[1] Defense counsel stipulated to the victim's in-court identification of Bradley.
[2] We note that Bradley claims, "[t]here are certainly questions of credibility of the [s]tate's victim." He contends that the victim's testimony cannot be considered as a matter of law because he has a criminal record and served a prison term. The credibility of witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 231. Further, Bradley bases this contention on the wrong standard of law. In a sufficiency argument, credibility of the witnesses should never be considered. It is weight of the evidence that concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. See,State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
[3] In addition, in Dawson, we pointed out that every appellate district in Ohio has reached the same conclusion. Id. at fn.1, citingState v. Bruce, 1st Dist. No. C-060456, 2007-Ohio-175; State v.Durbin, 2d Dist. No. 2005-CA-134; State v. McGhee, 3d Dist. No. 17-06-05, 2006-Ohio-5162; State v. Courtney, 4th Dist. No. 06CA18,2007-Ohio-1165; State v. Paynter, 5th Dist. No. CT2006-0034,2006-Ohio-5542; State v. Friess, 6th Dist. No. L-05-1307,2007-Ohio-2030; State v. Haschenburger, 7th Dist. No. 05MA192,2007-Ohio-1562; State v. Newman, 9th Dist. No. 23038, 2006-Ohio-4082;State v. Gibson, 10th Dist. No. 06AP-509, 2006-Ohio-6899; State v.Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011; and State v.Andrews, 12th Dist. No. CA2006-06-142, 2007-Ohio-223. *Page 1